COLEMAN, J.,
for the Court:
¶ 1. Ivory J. Randall appeals from an order rendered by the Circuit Court of Sunflower County by which that court dismissed Randall’s petition to be credited with executive time for work that he performed during the severe winter storm which gripped the Delta in February 1994 pursuant to Executive Order No. 747 issued by Governor Kirk Fordice on April 12, 1994. Randall appeals to present the following four issues, which we quote from his brief:
1. WHETHER CIRCUIT COURT ERRED IN HOLDING THAT IT HAD NO JURISDICTION TO INTERVENE IN MATTER WHERE IT WAS CLEAR, FROM COURT’S OWN ORDER, THAT APPELLANT “PROBABLY DID DO SOME EXTRA WORK” AND WHERE CIRCUIT COURT HAD ERSTWHILE GRANTED RELIEF TO ANOTHER PETITIONER PURSUANT TO THE SAME EXECUTIVE ORDER NO. 747.
2. WHETHER THE 14™ AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 14, OF THE MISSISSIPPI CONSTITUTION, REQUIRED THAT APPELLANT BE ALLOWED CREDIT FOR THE WORK HE PERFORMED DURING THE EMERGENCY ICE STORM SINCE, A) THE WORK PERFORMED WAS EXTRA WORK (IN EXCESS OF APPELLANT’S REGULAR PRISON ASSIGNMENT), AND B) WHERE OTHER INMATES WHO HAD ACTUALLY PERFORMED EXTRA WORK ON THE PREMISES OF THE INSTITUTION, TO AIDE THE INSTITUTION IN THE WAKE OF THE DISASTER, HAD BEEN GRANTED EXECUTIVE EARNED TIME UNDER THE PROVISIONS OF EXECUTIVE ORDER NO. 747.
3. WHETHER APPELLANT WAS SUBJECTED TO A GRIEVOUS LOSS, TRIGGERING THE PROTECTION OF THE CONSTITUTION, WHERE THE COURT *1085 BASED ITS REASON, IN PART, UPON A FINDING THAT APPELLANT DID NOT PERFORM ANY HAZARDOUS WORK AND SINCE THIS REASON WAS CLEARLY ERRONEOUS IN VIEW OF FACT THAT EXECUTIVE ORDER DID NOT SPECIFY OR LIMIT CREDIT TO HAZARDOUS WORK ONLY AND SINCE OTHER INMATES, WHO PERFORMED THE SAME TYPE WORK AS APPELLANT, RECEIVED SUCH CREDITS.
4. WHETHER EQUITY DEMANDED THAT APPELLANT BE ALLOWED HIS CREDITS, JUST AS THE PETITIONER IN DANTZLER V. FORDICE, 95-0172M, SINCE BOTH INMATES PERFORMED COMPATIBLE WORK DURING THE ICE STORM DISASTER IN EXCESS OF THEIR NORMAL PRISON ASSIGNMENT.
We affirm the circuit court’s dismissal of Randall’s petition.
I. FACTS
¶ 2. During a severe winter storm in February 1994, some inmates of the penitentiary at Parchman volunteered to participate in “cleanup work detail[s],” and were transported to sites of severe storm damage outside the penitentiary to work at repairing the damage caused by the freezing rain and sleet which fell during the storm. To recognize the services which these inmates performed, Governor Ford-ice executed Executive Order No. 747 on April 12, 1994, from which the following portions are quoted:
WHEREAS, during the month of February, 1994, freezing rain and sleet produced by a severe winter storm caused massive damage to the northern part of the State of Mississippi. The list of inmates who volunteered to participate in the cleanup work detail is attached to this Executive Order and made a part hereof.
WHEREAS, these inmates satisfactorily performed services for the citizens of Mississippi, and the State’s policy is to encourage the rehabilitation and a sense of public responsibility on the part of inmates, and to provide urgently needed assistance during emergency situations.
NOW, THEREFORE, I Kirk Ford-ice, Governor of the State of Mississippi, under and by virtue of the authority vested in me by the Constitution and applicable statutes of this State, do hereby grant to the individuals named on the attached list, as reflected by the work schedule maintained by the Commissioner of the Mississippi Department of Corrections, fifteen days executive good time for each day worked, not to exceed one hundred eighty (180) days. Persons under sentence for life are prohibited from having time applied toward parole eligibility.
All executive good time granted by this Order will count toward parole and/or discharge.
This executive good time is granted at the request of the Department of Corrections and is based upon the recommendation of the Commissioner of the Department of Corrections.
¶ 8. The Commissioner omitted Appellant Randall’s name from the list of names which was attached to the governor’s Executive Order No. 747. According to the “sentence computation record” which the appellees attached to their answer to Randall’s petition, Randall’s maximum discharge date was September 18, 2013, but because Randall had earned “50% of total term of sentence” and had also earned “180 days meritorious earned time” as of 12-1-1992, Randall’s “earliest parole date” was 3-22-93, and his “discharge date” was 3-22-1998.[1]
*1086 II. LITIGATION
¶ 4. Pursuant to Section 47-5-803 of the Mississippi Code (Rev.1993), Randall pursued an administrative remedy within the Mississippi Department of Corrections to obtain credit for “executive time” which he claimed to have earned during the severe winter storm in February 1994 pursuant to Executive Order No. 747 issued by Governor Fordice on April 12, 1994. However, Steven W. Puckett, the Commissioner of the Mississippi Department of Corrections issued a “third step response form” in which he advised Randall that “[i]nmates who performed normal work duties during the ice storm are not eligible for Executive Time.” As Section 47-5-807 of the Mississippi Code (Rev.1993) allows, Randall filed a petition for order to show cause or for an order directing that petitioner be credited with executive time in the Circuit Court of Sunflower County.
¶ 5. While Randall admitted in his petition that he “was not carried away from the premises of Parchman to perform work in ice storm ’94,” he alleged that “on the designated dates of the ice storm par-ticipantsf] departure, every eligible and available inmate, including Petitioner Randall, was required to work on the premises of the Mississippi State Penitentiary performing some emergency work assignment, other than their regularly assigned and classified job function, because of the emergency.” Randall further alleged that the staff of Unit 30, in which he was housed, had told him that he would be eligible for and would receive ample executive time for participating in such disaster, but later he “was told that he would not get any executive time after the last inmate received notice.” Randall further claimed in his petition that “[although [he] was not allowed to go on the emergency ice storm detail, [he] did work in an emergency work detail cleaning up and repairing behind the ice storm disaster just as other inmates.” Randall charged that while these other inmates “did not leave the prison premises,” they “did receive executive time for such work performance.”
¶ 6. The appellees, Raymond Roberts, the superintendent of the penitentiary at Parchman, and Commissioner Puckett filed their answer to Randall’s petition. In their answer, Commissioner Puckett and Superintendent Roberts denied that “everyone got [executive time],” admitted that Randall “had to work,” denied it was “emergency work,” and further denied that Randall “was told he would get time....”
¶ 7. Apparently in response to a notice of hearing filed in the clerk’s papers, the circuit judge heard Randall’s petition on May 22, 1996, although no transcript of that hearing is included in the record. Nevertheless, the circuit judge entered an order dated May 22, 1996 dismissing Randall’s petition, in which he opined that he did “not believe [this Court] has any authority to intervene in this matter, even though Mr. Randall probably did do some extra work.” Randall responded to the dismissal of his petition by filing a motion for Rule 60(b) relief, and Superintendent Roberts and Commissioner Puckett filed their response to Randall’s motion.
¶ 8. The circuit judge conducted a hearing on Randall’s motion for Rule 60(b) relief on January 9, 1997. The transcript of this hearing is included in the record. The transcript reflects that two penitentiary employees, Terry Barber and Brenda Perry, were present at the hearing, although only Mr. Barber testified in response to questions posed by the circuit *1087 judge. Mr. Barber testified that he supervised Randall when he worked during the “ ’94 ice storm.” Mr. Barber further testified that “we didn’t tell [Randall] we could [let him have good time] or whatever ... because it was on a voluntary basis.” When the circuit judge asked Mr. Barber if Randall’s records “show[ed] in any way that [Randall] was informed of the executive good time for his work,” Mr. Barber replied, “I wouldn’t know, sir.”
¶ 9. The circuit judge then directed his questions to Randall. He asked Randall, “[W]ho and from where did you get the information that you would be given executive time for your working in the ice storm?” Randall answered:
Uh — “A” custody inmates that worked during the ice storm did receive their ice storm time, and — uh—it wasn’t normal work. I was assigned to school. That’s where I was classified; that was my normal duties, to be in school at that particular time. Every — everybody who volunteered to work during the ’94 ice storm did receive their time....
Later, Randall explained to the judge that “during the ice storm, we also hauled fresh waters [sic] to all the buildings that were there.” Randall elaborated that “[a]ll our toilet facilities were stopped up, and I performed ... on flushing them.” Mr. Barber verified that Randall had painted in the law library during the ice storm. Randall testified that he considered his work during the ice storm not to be his normal duty because he had been assigned to school. Randall claimed that his work was hazardous because the ice across which he carried the water was slippery. He stated, “A couple of times I did slip and fall.”
¶ 10. Just before the hearing concluded, Randall alluded to another case filed by an inmate named Danny Dantzler, in which the same judge had allowed Dantzler to receive “executive time” pursuant to Executive Order No. 747. The judge responded that “Mr. Dantzler’s supervisor confirmed the fact that [Dantzler] went off the grounds and did do some of the hazardous work.” However, no appeal emanated from the Dantzler case.
¶ 11. The next day, the circuit judge entered an order in which he dismissed Randall’s petition. We quote the following portions of that order:
This Court did in the case brought by Danny Dantzler vs. Governor Fordice grant the promised time on the basis that [Dantzler] worked in the category of inmates [to] whom the governor granted time. This Court found that equity demanded the granting of the time. MDOC personnel testified that Dantzler worked in the same category as the others who had received the time.
Petitioner here [Randall] alleged that MDOC personnel would testify that he was entitled to the time. The Court heard witnesses who confirmed that petitioner worked during the ice storm but that he was not in the category of inmates who received executive time. The inmates who received executive time performed hazardous duties. Mr. Randall did such work as cleaning out commodes, painting the law library, etc.
Equity does not demand that [Randall] be given the relief given another inmate in an altogether different situation.
It is from this order that Randall has appealed. His appeal is in forma pauper-is pursuant to an order entered by the circuit court; hence our award of costs to Sunflower County.
III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES
A. Did the circuit court err in finding it had no jurisdiction when it initially dismissed Appellant’s petition?
¶ 12. Randall begins his argument on this issue by noting that in its order rendered May 22, 1996, the circuit court opined that it did “not believe it ha[d] any *1088 authority to intervene in this matter, even though Mr. Randall probably did do some extra work.” This comment demonstrates his lack of understanding of the meaning of the word “jurisdiction.” The judge’s belief that the circuit court had no authority to intervene in Randall’s claim was not the judge’s determination that the circuit court did not have jurisdiction of Randall’s petition. Instead, the circuit court’s dismissal of Randall’s petition both by its order dated May 22,1996 and by its subsequent order dated January 10, 1997, resulted from the circuit court’s exercise of its jurisdiction over Randall’s appeal from the adverse decision of Commissioner Puckett which Section 47-5-807 of the Mississippi Code bestowed upon it.[2] This Court resolves Randall’s first issue adversely to him.
B. Do the U.S. Constitution and the Mississippi Constitution require that Randall be allowed executive good time for his work during the ice storm?
¶ 13. Randall cites but one case to support his argument that the Constitutions of the United States and Mississippi require that he be allowed executive good time for his work during the ice storm, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). However, there are many distinctions between San-din and Randall’s claim that he was entitled to receive executive good time for his work during the February 1994 winter storm. By no means the least of these distinctions is that whereas Randall’s entitlement to receive executive good time was created by the governor’s clemency power found in Section 124 of the Mississippi Constitution, prison inmate Conner’s claim rested on a prison regulation which instructed prison officials “to find guilty when a misconduct charge is supported by substantial evidence.” Sandin, 515 U.S. at 473, 115 S.Ct. 2293. In Sandin, the United States Supreme Court concluded that “neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner [the inmate] a protected liberty interest that would entitle him to be procedural protections set forth in Wolff [v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ].” Sandin, 515 U.S. at 473,115 S.Ct. 2293.. Thus, Sandin does not support Randall’s position on his second issue.
¶ 14. However, the Mississippi Supreme Court, in Ross v. State, 584 So.2d 777 (Miss.1991), has addressed the issue of whether failing to award meritorious earned time to an inmate violates the inmate’s constitutional rights. The supreme court determined that the Mississippi statute governing meritorious earned time vested MDOC officials with discretion in awarding earned time. Ross, 584 at 779. The court further reasoned that “no ‘entitlement’ to earned time exists because correctional officials may exercise their discretionary power in awarding or refusing to award earned time.” Id.
¶ 15. If it is true as the Mississippi Supreme Court held in Ross that “no ‘entitlement’ to earned time exists because correctional officials may exercise their discretionary power in awarding or refusing to award earned time,” 584 So.2d at 779, then it is even more certain that the governor of this State may exercise his discretionary power in awarding executive time. In Whittington v. Stevens, 221 Miss. 598, 73 So.2d 137 (1954), the Mississippi Supreme Court declared unconstitutional the following statutory provision found in what was then Section 7907 of the Mississippi Code of 1942: ,
Any convict working under the direction of the board of supervisors who is so crippled or incapacitated because of illness that he cannot perform manual la *1089 bor may have deducted from the term of his imprisonment one-half thereof when his inability to work has been certified to by the jail physician and duly spread upon the minutes of said board.
Miss.Code Ann. § 7907 (1942). The supreme court held that this statutory provision was “an infringement upon the pardoning power vested in the governor.” Whittington, 221 Miss, at 605, 78 So.2d at 140. The supreme court explained:
It is the general rule in most American jurisdiction that where such power [to pardon or to commute a sentence] is vested in the governor his powers in this respect may not be infringed upon. This Court has so held in State v. Kirby, ... (96 Miss. 629, 51 So. 811 (1910)). The power is one inherently vested in the people, who, by constitutional provision, may vest it where they choose. By Section 124 of the Constitution, they have vested it in the governor with one exception. By Section 225 of the Constitution, the legislature may provide for the commutation of the sentence of convicts for good behavior.
Whittington, 221 Miss, at 603, 78 So.2d at 139. Thus, we are unpersuaded by Randall’s argument that he is constitutionally entitled to receive executive good time based upon Executive Order No. 747, and we decide Randall’s second issue adversely to him.
C. Was the circuit court’s finding that Appellant did not perform work which required that he be granted executive good time so clearly erroneous that Appellant is subject to the protection of the constitution for the loss he suffered?
¶ 16. For his third issue, Randall argues “that the deprivation of earned time or the ability to accumulate credits toward decreasing actual period of incarceration amounts to a grievous loss under the Due Process Clause.” Randall cites Sandin, Williams v. Puckett, 624 So.2d 496 (Miss. 1993), and Tiller v. State, 440 So.2d 1001 (Miss.1983), to support this assertion which he offers to support his argument on his third issue.
¶ 17. We previously reviewed Sandin and found it irrelevant to the issues which Randall presents in his appeal. Williams v. Puckett dealt with the correct interpretation of Sections 47-5-139(2) and 47-7-3 of the Mississippi Code as they pertained to the “statutory scheme in relation to parole eligibility, ‘earned time,’ consecutive sentences, and mandatory sentences.” Williams, 624 So.2d at 497. However, nowhere in Williams did the supreme court opine that “a grievous loss [caused by the deprivation of earned time] triggered the protections of the due process clause of the Constitution,” as Randall claims. The only issue of constitutional import raised in Tiller was whether the Department of Corrections’s change in its interpretation of Section 47-7-3(d) of the Mississippi Code to deny an inmate convicted of armed robbery the opportunity of earning “good time” violated the ex post facto clauses of the federal and state constitutions. Tiller, 440 So.2d at 1005. The Mississippi Supreme Court cited Taylor v. Mississippi State Probation and Parole Board, 365 So.2d 621, 622 (Miss.1978) to support its conclusion that “administrative correction of a prior misinterpretation of parole laws ... did not violate the ex post facto clause of the United States or Mississippi Constitutions.” Tiller, 440 So.2d at 1005 (quoting Taylor, 365 So.2d at 622). Besides, the primary issue in Tiller was whether the trial judge had erred when he summarily dismissed Tiller’s application to withdraw his plea of guilty to the charge of armed robbery without affording Tiller an evidentiary hearing. Id. at 1003. Thus, Tiller no more supports Randall’s position in his third issue than does Williams. Instead, this Court finds that the previous review of Randall’s first issue, including the analysis of Ross v. State, 584 So.2d 777 (Miss.1991), on which Commissioner Puckett and Superintendent Roberts rely, re-solvés this issue adversely to Randall.
*1090 D. Does equity demand that Appellant be allowed executive good time in light of Dantzler v. Fordice, 95-0172M?
¶ 18. The record in this case contains a copy of an order entered in cause no. 95-0172M of the Circuit Court of Sunflower County entitled “Danny Dant-zler v. Gov. Kirk Fordice and the State of Mississippi,” by which that Court ordered “that Dantzler be credited with 165 days executive time which represents 180 days due less 15 days [Dantzler] has already been awarded.” In the case sub judice, Randall in essence argues that “[w]hat’s sauce for the goose, is sauce for the gander.” In other words, if the circuit court was of the opinion that “equity demand[ed]” that Dantzler be awarded “ice storm emergency” credits, then so would equity demand that he, Randall, also be awarded executive time pursuant to Executive Order No. 747.
¶ 19. This Court thinks it noteworthy that in the order by which the circuit court awarded Dantzler 165 days “executive time,” the judge wrote: “While this Court may be treading on thin ice in awarding this time,.... ” There was no appeal from that order; thus as a court of appellate jurisdiction, this Court is in no way bound by that decision. Instead, regardless of the state of the evidence in the record in the case sub judice, this Court must faithfully apply the decisions of the Mississippi Supreme Court as binding precedent where those decisions are applicable to the issues which this Court must resolve in any appeal. As we are obligated to do, we apply Ross v. State to our resolution of Randall’s fourth and last issue. In Ross, the supreme court concluded “that an inmate’s earning of ‘time’ is a matter of grace or privilege,” and that “correctional officials are vested with discretionary power to award time under certain conditions and, therefore, inmates are not entitled to it.” Ross, 584 So.2d at 779. Because Commissioner Puckett’s power to recommend to the governor that the governor grant executive time to Randall pursuant to Executive Order No. 747 was discretionary, the circuit court’s grant of 165 days “executive time” to Dantzler for whatever reason is utterly irrelevant to the circuit court’s dismissal of Randall’s petition.
IV. CONCLUSION
¶ 20. Executive Order No. 747 specifically provided that “[t]his executive good time is granted at the request of the Department of Corrections and is based upon the recommendation of the Commissioner of the Department of Corrections.” Section 124 of Mississippi’s Constitution vests the governor with the power to pardon or to commute a sentence, and the Mississippi Supreme Court has instructed that the governor’s “powers in this respect may not be infringed upon.” See Whittington, 221 Miss, at 605, 73 So.2d at 140. Randall’s claim to eligibility to receive “executive time” depended upon the governor’s power to pardon or otherwise to commute Randall’s sentence. However, the language contained in Executive Order No. 747 made it apparent that the governor conditioned his grant of “executive time” to those “inmates [who] satisfactorily performed services” during the winter storm in February 1994 “upon the recommendation of the Commissioner of the Department of Corrections.” Ross establishes that the Commissioner’s “power to award time under certain conditions” is “discretionary.” See Ross, 584 So.2d at 779. Because Commissioner Puckett’s power to recommend to the governor that Randall receive “executive time” was discretionary and because no state court may infringe upon the governor’s power to pardon or to commute sentences, the circuit court did not err when it dismissed Randall’s petition for order to show cause or, for an order directing that petitioner be credited with executive time. Thus, this court af *1091 firms the order dismissing Randall’s petition which the Circuit Court of Sunflower County rendered on January 10,1997.
¶ 21. THE ORDER OF THE CIRCUIT COURT OF SUNFLOWER COUNTY DISMISSING APPELLANT’S PETITION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.

. While Randall’s discharge date was 3-22-1998 based upon "50% of total term of sen *1086 tence" and “180 days meritorious earned time” as of 12-1-1992, has passed, this Court concludes that Randall’s issues are not moot because Section 47-5-138(2) of the Mississippi Code provides that ”[a]n inmate may forfeit all or part of his earned time allowance for a serious violation of rules.” Miss. Code Ann. § 47-5-138(2) (Supp.1993). If Randall forfeited a portion of his earned time, then his discharge date of 3-22-1998 might be so postponed that the 180 days of executive good time to which he has made a claim in this case might yet be used to advance his discharge date.

. Section 47-5-807 provides that ‘‘[a]ny offender who is aggrieved by an adverse decision rendered pursuant to any administrative review procedure under Sections 47-5-801 through 47-5-807 may, within thirty (30) days after receipt of the agency’s final decision, seek judicial review of the decision.” Miss.Code Ann. § 47-5-807 (Rev. 1993).